**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FIRST FINANCIAL BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0731-WS-M** |
| | ) | |
| **CS ASSETS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on the Motion to Intervene, to Stay and Notice of Pendency of Action to Nullify Sale (doc. 4) filed by putative intervenors West Beach, LLC ("West Beach") and Ben Chenault, Sr., Albert L. Weber, and Matthew Piell (collectively, the "Guarantors").[1]  The Motion has been briefed and is now ripe for disposition.

**I.      Relevant Background.**

The court file reflects that plaintiff, First Financial Bank, filed its Complaint for Redemption of Real Property in the Circuit Court of Baldwin County, Alabama, on or about November 7, 2008.  In state court, this action was captioned *First Financial Bank v. CS Assets, LLC*, CV-2008-901215.  The Complaint alleged, *inter alia*, that defendant, CS Assets, LLC, had purchased certain real property owned by West Beach, LLC at a foreclosure sale on November 30, 2007; that First Financial held a junior mortgage on the property; that CS Assets had actual knowledge of West Beach's indebtedness and the First Financial mortgage at the time of the

---

[1]       There is some inconsistency in the Motion and ensuing briefing as to whether West Beach alone seeks to intervene, or whether the Guarantors also wish to do so.  For example, the first paragraph of the Motion identifies only West Beach as a would-be intervenor, but the concluding paragraph requests that both West Beach and the Guarantors be allowed to intervene.  The reply brief (doc. 15) in favor of intervention recites only West Beach as a putative intervenor, but reflects in the signature block that counsel represents both West Beach and the Guarantors.  Notwithstanding these discrepancies, the Court assumes that both West Beach and the Guarantors seek intervenor status herein, and construes the Motion accordingly.

foreclosure sale; and that First Financial wishes to exercise its statutory right of redemption pursuant to Alabama Code §§ 6-5-247 *et seq.* First Financial and CS Assets (the only parties to this litigation) are apparently in agreement that First Financial possesses a right of redemption, and disagree solely as to the amount of money necessary to effectuate that redemption.

On December 22, 2008, CS Assets filed a Notice of Removal (doc. 1) removing this action to this District Court and predicating federal subject matter jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332. As such, the dispute between First Financial and CS Assets concerning redemption of the subject real property is now pending before the undersigned. In recognition of that fact, the Court entered an Order (doc. 14) on February 6, 2009, authorizing the transfer of $3.2 million in tendered redemption funds by First Financial into the registry of this District Court from the Circuit Court of Baldwin County, where First Financial originally tendered the funds prior to removal.

As fate would have it, the instant redemption proceedings are not the only pending lawsuit seeking to alter the results of the CS Assets foreclosure sale of the subject property. Indeed, the court file reflects that there is also litigation pending between CS Assets, on the one hand, and West Beach and the Guarantors, on the other, in the U.S. District Court for the Northern District of Alabama, where the case is captioned *CS Assets, LLC v. West Beach, LLC*, Civil No. 07-PT-2254-S (the "Northern District Action"). In the Northern District Action, CS Assets seeks to recover from West Beach and the Guarantors a deficiency in excess of one million dollars, representing the difference between the amount of West Beach's note to CS Assets and the offsetting funds generated by the foreclosure sale of the property (which was purchased by CS Assets). West Beach and the Guarantors have brought counterclaims against CS Assets sounding in wrongful foreclosure and requesting that the foreclosure sale be set aside because the purchase price bid by CS Assets was so disproportionate to the property's fair market value as to shock the conscience.[2] On December 9, 2008, Chief Magistrate Judge Paul

---

[2]     To that end, West Beach and the Guarantors have apparently marshaled evidence reflecting that they originally purchased a portion of that property prior to its being zoned for development for nearly $5 million in 2004, that their indebtedness to CS Assets to finance the purchase of said property was approximately $2.5 million, that the property was appraised at various times in the last several years at upwards of $7 million, and that CS Assets paid $1.6

W. Greene of the Northern District of Alabama entered a Report and Recommendation in that case recommending that the parties' cross-motions for summary judgment be denied because of the existence of genuine issues as to the value of the property at the time of the foreclosure sale and whether, as a matter of law, the variance between that fair market value and the foreclosure price paid by CS Assets was so vast as to shock the conscience.[3]  Although the parties have failed to keep the undersigned apprised of the status of the Report and Recommendation (an omission which is baffling in light of the recommendation's potential significance to West Beach's request to intervene herein), independent review of the docket sheet in the Northern District Action confirms that on February 6, 2009, Senior District Judge Robert B. Propst entered an order ratifying and confirming the recommendation in all material respects, without prejudice to further consideration of these issues on summary judgment or at trial upon expansion of the factual record.[4]  As present, then, the Northern District Action appears to be moving forward towards trial.

**II.    Analysis.**

In filings that are curiously devoid of citations to authority, West Beach and the

---

million for the property at the November 2007 foreclosure sale.

[3]    West Beach and the Guarantors do not advance their cause by overstating the conclusions and implications of the Report and Recommendation.  The putative intervenors represent that the Report and Recommendation "should result in the setting aside of the sale" and that adoption of that recommendation would mean that "the foreclosure sale will not be approved and ... the foreclosure sale should be set aside."  (Doc. 4, ¶¶ 4, 7.)  In fact, however, the import of the Report and Recommendation is merely that the wrongful foreclosure issue remains open and undecided pending a trial on the merits.  Because of the outstanding factual issues identified by the Magistrate Judge, no inference can be drawn from the Report and Recommendation that West Beach and the Guarantors will or will not ultimately succeed in their quest to set aside the foreclosure sale.

[4]    The Court notes, however, that Judge Propst's February 6 Order does not engender undue optimism concerning West Beach and the Guarantors' wrongful foreclosure theory, as he opined that "[t]he bid price here does not, in and of itself, shock this judge's conscience."  That said, Judge Propst enumerated several factors (as to which factual development is necessary) that may bear on the ultimate issues of "whether the foreclosure proceeding was fraudulent or whether there were reasonable business reasons for the bid price."  Certainly, nothing about the February 6 Order would support an inference that West Beach and the Guarantors are substantially certain to prevail in their efforts to overturn the foreclosure sale.

Guarantors have requested leave to intervene in this action.  The putative intervenors do not suggest that they have any protectable interest in fixing the financial parameters of any redemption rights that First Financial may exercise over the property; rather, they seek to block the redemption action from moving forward altogether pending a final resolution of their rights to set aside the foreclosure sale in the Northern District Action.  Apparently, then, West Beach and the Guarantors seek to intervene in this action for the sole purpose of obtaining an indefinite and perhaps protracted stay of these proceedings until the Northern District Action has been fully and finally adjudicated.

Although West Beach and the Guarantors fail to reference it in their filings, their request to intervene herein is governed by Rule 24, Fed.R.Civ.P.  "Rule 24 provides two avenues for a nonparty to intervene in a lawsuit; intervention as of right and intervention with permission of the court."  *In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1246 (11th Cir. 2006); *see also Ciba Specialty Chemicals Corp. v. Tenesaw Land and Timber Co.*, 233 F.R.D. 622 (S.D. Ala. 2005) (considering and applying both intervention as of right and permissive intervention principles).  To intervene as of right pursuant to Rule 24(a), a party "must show that it has an interest in the subject matter of the suit, that its ability to protect that interest may be impaired by the disposition of the suit, and that existing parties in the suit cannot adequately protect that interest."  *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (citing *Georgia v. U.S. Army Corps of Engineers*, 302 F.3d 1242, 1250 (11th Cir. 2002)). By contrast, permissive intervention under Rule 24(b) confers discretion upon district courts to grant permission to intervene "when [the] applicant's claim or defense and the main action have a question of law or fact in common."  *Bayshore Ford*, 471 F.3d at 1246 (citation omitted); *see also Mt. Hawley*, 425 F.3d at 1312 ("Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.") (citing *Georgia*, 302 F.3d at 1250).

West Beach and the Guarantors have failed to invoke either Rule 24(a) or Rule 24(b); moreover, it is impossible to discern from their filings whether their request for intervention is grounded in a theory of intervention as of right or permissive intervention.  That said, regardless of whether a party predicates intervention on Rule 24(a) or Rule 24(b), "the plain language of

-4-

Rule 24 requires the intervenor's interest to be based on the action pending before the court."
*Bayshore Ford*, 471 F.3d at 1246.  What interest do West Beach and the Guarantors have in this
lawsuit, the sole purpose of which is to adjudicate the financial terms under which First Financial
may exercise its right to redeem the subject property?  Certainly, West Beach and the Guarantors
would not participate in First Financial's redemption, and they have made no showing that it
affects them one whit what the redemption valuation of the property is.  Instead, the putative
intervenors state in conclusory terms that "allowing this action to proceed could result in the
parties being subjected to incurring double, multiple, or otherwise inconsistent obligations in this
case" (doc. 4, ¶ 7) and that First Financial's "claims are dependent upon a resolution of West
Beach's claims" (doc. 15, ¶ 1) in the Northern District Action.

      From these cursory allegations, it is unclear what the putative intervenors are saying.  It
appears, however, to be their position that adjudication of First Financial's redemption rights in
this action would somehow trammel, abrogate or conflict with West Beach and the Guarantors'
rights to set aside the foreclosure sale in the Northern District Action.  It is not evident why that
would be so.  Indeed, in its opposition to the Motion to Intervene, First Financial has set forth a
lucid explanation, supported by Alabama authorities, that the putative intervenors will be
afforded adequate protection, regardless of the outcome of these proceedings, by the doctrine of
*lis pendens*.  As First Financial explains it, "[i]f West Beach prevails in its case against CS
Assets, both the foreclosure sale and the redemption by First Financial Bank will be undone" by
operation of *lis pendens*.  (Doc. 10, ¶ 1.)[5]  First Financial further states that, in that event, First
Financial would be made whole because it would be entitled to restitution of any redemption
proceeds that it had paid over to CS Assets and, potentially, an equitable lien attaching to CS
Assets' interests in the property to secure and protect First Financial's restitution rights.  Thus,
First Financial has unequivocally represented that in the event that First Financial exercises its

---

      [5]    *See generally Smith v. Player*, 601 So.2d 946, 949 (Ala. 1992) (where purchasers
of property had constructive notice of another's claim to the property by virtue of *lis pendens*
notice filed prior to their purchase, purchasers had no protection from that other's claim of title
after same was vindicated in court proceedings); *Willis v. Lewis*, 148 So. 330, 331 (Ala. App.
1933) (*lis pendens* doctrine provides that where purchase of real property is made "with actual
notice of the pendency of a suit relating thereto, there is no question but that the person acquiring
the right takes subject to the judgment or decree").

right to redemption in this case and (at some later time) West Beach successfully voids the foreclosure sale in the Northern District Action, West Beach's interest in possessing the property would be superior to that of First Financial and the redemption would be undone by operation of Alabama law.  If that interpretation of Alabama *lis pendens* principles is correct, then the putative intervenors have no stake whatsoever in these proceedings.  Irrespective of the outcome of First Financial's redemption action, then, the proposed intervenors would be entitled to recover the property if the foreclosure sale is set aside in the wrongful foreclosure litigation.

West Beach and the Guarantors neither challenge the validity of First Financial's interpretation of Alabama's *lis pendens* doctrine, nor rebut it with any contrary authorities of their own.  More fundamentally, if West Beach and the Guarantors are worried that First Financial will somehow use its redemption of the property to obstruct the setting aside of the foreclosure sale if West Beach prevails in the Northern District Action, First Financial's own admissions and representations in this proceeding should allay those fears.  Simply put, First Financial has acknowledged its intent to step aside (subject to restitution rights) if West Beach and the Guarantors succeed in undoing the foreclosure sale.  Given that locked-down, on-the-record admission, it is difficult to envision a scenario in which the property would be subject to conflicting rights and interests by First Financial and the putative intervenors depending on the outcome of these proceedings.  If the proposed intervenors succeed in their litigation with CS Assets, the foreclosure sale will be voided and any redemption effectuated in these proceedings will be undone.  If the proposed intervenors fail to prove wrongful foreclosure in the Northern District Action, then the redemption by First Financial will proceed on such terms as are adjudicated herein.  Either way, the putative intervenors have failed to demonstrate any residual conflict, much less the overlapping or inconsistent obligations to which they alluded in their Motion to Intervene.  This Court will not develop their arguments for them.

Based on the foregoing analysis, the undersigned finds that West Beach and the Guarantors have failed to make an adequate showing for intervention under either Rule 24(a) or Rule 24(b).  With respect to intervention as of right under Rule 24(a), the proposed intervenors have failed to show that their ability to protect their interest in recovering the property in the Northern District Action may be impaired in any material way by adjudication of the redemption issues in this lawsuit.  *See Georgia*, 302 F.3d at 1250 (intervention as of right requires proposed

intervenor to "show ... that its ability to protect that interest may be impaired by the disposition of the suit"). As for permissive intervention under Rule 24(b), West Beach and the Guarantors have shown neither (a) that their wrongful foreclosure claim involves common questions of law or fact to those joined herein, nor (b) that allowing them to intervene would not unduly delay these proceedings. In fact, the express purpose of West Beach and the Guarantors' request to intervene in this action is to delay these proceedings, rather than for West Beach and the Guarantors to be heard on any issue of fact or law properly joined herein that affects them. Based on the parties' arguments, the Court discerns no basis for the proposed intervenors' contention that they may be adversely affected by these proceedings, much less any reason to believe that they will suffer prejudice unless this action is brought to a full stop until the Northern District Action is concluded.

**III.     Conclusion.**

For all of the foregoing reasons, the Motion to Intervene (doc. 4) filed by West Beach and the Guarantors is **denied** pursuant to Rule 24, Fed.R.Civ.P. Petitioners not having been allowed to intervene herein, the Court deems **moot** their request to stay this action if intervention is permitted.[6]


DONE and ORDERED this 14th day of February, 2009.


s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[6]     West Beach and the Guarantors devote two of the three paragraphs of their reply brief (doc. 15) to musing that transfer and consolidation of this action with the Northern District Action would be efficient and expeditious, but that counsel must investigate the appropriate means of doing so. There being no pending motion either to transfer or to consolidate, this Court expresses no opinions and makes no findings as to the propriety of transfer and consolidation at this time, nor does it extend any guidance to West Beach and the Guarantors concerning the most effective procedure to accomplish that end. That said, West Beach and the Guarantors are encouraged to work with First Financial and CS Assets to determine whether a mutually agreeable proposal might be formulated concerning any contemplated transfer / consolidation.

-7-