**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FIRST FINANCIAL BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 08-0731-WS-M** |
| | ) | |
| **CS ASSETS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on defendant CS Assets, LLC's Motion to Transfer (doc. 22). The Motion has been briefed and is ripe for disposition.

**I.      Background.**

This action is one of two lawsuits arising from the November 2007 foreclosure sale of certain real property located in Baldwin County, Alabama. The property, which had been owned by non-party mortgagor West Beach, LLC, was purchased at the foreclosure sale by defendant and senior mortgagee, CS Assets, LLC. The proceeds of the sale were used to offset West Beach's indebtedness to CS Assets. Plaintiff, First Financial Bank, held a junior mortgage on the property.

In December 2007, CS Assets filed suit against West Beach and others in the U.S. District Court for the Northern District of Alabama seeking to recover a deficiency representing the difference between the amount of West Beach's note to CS Assets and the funds generated by the foreclosure sale. West Beach, in turn, counterclaimed against CS Assets in the Northern District action on grounds of wrongful foreclosure, seeking to have the foreclosure sale set aside because the proceeds were allegedly disproportionately low relative to the property's fair market value. The Northern District suit remains pending today; indeed, the discovery deadline for that action is May 20, 2009, with a pretrial conference to follow in August 2009.

The case at bar is the second action arising from the November 2007 foreclosure sale. On or about November 7, 2008, First Financial filed suit against CS Assets in the Circuit Court

of Baldwin County, Alabama, seeking to exercise its statutory right of redemption of the West Beach property purchased by CS Assets in foreclosure. CS Assets has conceded that First Financial is entitled to redeem the subject property under Alabama Code §§ 6-5-247 *et seq.*, and has explained that "[t]he only issue in dispute before this Court is the amount of money necessary to effectuate that redemption." (Doc. 9, at 4.)[1] On January 5, 2009, CS Assets removed this case to this District Court pursuant to 28 U.S.C. §§ 1332 and 1441, on the grounds that the parties are of diverse citizenship and the amount in controversy exceeds the jurisdictional threshold (as evidenced by the $3.2 million placed in the court registry following removal). The applicable Rule 16(b) Scheduling Order (doc. 20) in this case sets the Final Pretrial Conference for January 2010, with a bench trial to follow in February 2010.

In its Motion to Transfer, CS Assets requests that this action be transferred to the U.S. District Court for the Northern District of Alabama on a *forum non conveniens* theory pursuant to 28 U.S.C. § 1404(a). In support of this Motion, CS Assets maintains that transfer is warranted for the following reasons: (i) the convenience of parties and witnesses, and the interest of justice, favor transfer; (ii) a substantial part of the events or omissions giving rise to the claim occurred in the Northern District, such that this action could originally have been brought there; and (iii) following transfer, this case can be consolidated with the pending Northern District action between West Beach and CS Assets, which litigation "involves claims related to the same debt, parcels of property, and some of the same parties." (Doc. 22, at 1.) First Financial opposes a § 1404(a) transfer of venue.

## II.   Analysis.

### A.   Section 1404(a) Standard.

"District courts have broad discretion in deciding whether to transfer an action to a more convenient forum." *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp.2d 1290, 1307 (N.D. Ala. 2003) (citation omitted); *see also England v. ITT Thompson Industries, Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988) ("Trial judges are permitted a broad discretion in weighing the conflicting arguments

---

[1]     This formulation of the issues joined herein is not strictly accurate. After all, in recent weeks, the parties have disputed, and have called upon this Court to decide, several other issues, such as which parcels are subject to redemption by First Financial, and whether this action should be litigated in this District Court or in some other forum.

as to venue" under § 1404(a)).  As a general matter, "[t]he burden is on the moving party to prove that a case should be transferred." *Irwin v. Zila, Inc.*, 168 F. Supp.2d 1294, 1296 (M.D. Ala. 2001); *see also In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient"); *Holmes v. Freightliner, LLC*, 237 F. Supp.2d 690, 692-93 (M.D. Ala. 2002) (observing that, under § 1404(a) analysis, defendant bears burden of demonstrating that suggested forum is more convenient than plaintiff's selected forum).

The relevant federal statute governing CS Assets' Motion reads as follows: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Motions to transfer pursuant to § 1404(a) are subject to a two-step analysis that examines, first, whether the action could originally have been brought in the proposed transferee forum, and second, whether a balancing of the convenience of the parties and the interest of justice favors transfer in the specific case.  *See, e.g., Lasalle Bank N.A. v. Mobile Hotel Properties, LLC*, 274 F. Supp.2d 1293, 1301 (S.D. Ala. 2003); *C.M.B. Foods, Inc. v. Corral of Middle Georgia*, 396 F. Supp.2d 1283, 1286 (M.D. Ala. 2005); *Irwin*, 168 F. Supp.2d at 1296.  If the second step is reached, a court examining whether the balance of justice and convenience favors transfer considers a broad range of factors, including "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances."  *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).[2]

---

[2]        *See also Okongwu v. Reno*, 229 F.3d 1327, 1331 (11th Cir. 2000) ("A full venue analysis should consider what districts would support venue and analyze all convenience factors."); *Lasalle Bank*, 274 F. Supp.2d at 1301 (courts "generally consider the following factors: the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of the change; and trial efficiency").

Examination of these factors must not be performed mechanically or by rote; rather, what is required is "individualized case-by-case consideration of convenience and fairness." *Irwin*, 168 F. Supp.2d at 1296; *see also A.J. Taft*, 291 F. Supp.2d at 1307 ("The decision of whether a case should be transferred under § 1404(a) is an individualized case-by-case consideration of convenience and fairness.") (citations omitted); *Lasalle Bank*, 274 F. Supp.2d at 1301 (similar).

> **B.      *Application of Standard.***
>
>> **1.      *Whether This Action Could Have Been Brought in the Proposed Transferee Forum.***

As the foregoing authorities establish, the first prong of the § 1404(a) inquiry in this case is whether the Northern District of Alabama is a district "where it might have been brought."  28 U.S.C. § 1404(a).  If this action could not have been brought in the proposed transferee forum in the first place, then § 1404(a) transfer is inappropriate and the Motion should be denied, regardless of whether the convenience and fairness/efficiency factors would otherwise favor such a transfer.

CS Assets maintains that this action could initially have been filed in the Northern District of Alabama because, under the relevant venue statute, a civil action in which federal jurisdiction is predicated on diversity may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(a)(2).  In response, First Financial argues, with minimal citations to authority, that it "believes venue is proper only in the Southern District" (doc. 26, at 1) because this action arises from a foreclosure sale conducted in, and relates solely to real property located in, the Southern District of Alabama.

As a matter of Alabama statute, redemption actions generally must be brought in the same county where the subject property is found.  *See* Ala. Code § 6-5-255 (if a purchaser of land in a foreclosure sale refuses to reconvey title to a party entitled to redeem, the latter "shall thereupon have the right to file in the circuit court having jurisdiction thereof a complaint to enforce his or her rights of redemption"); Ala. Code § 6-3-2(a)(1) ("All actions for the recovery of land, of the possession thereof or for a trespass thereto must be commenced in the county where the land or a material part thereof lies.").  Thus, Alabama venue limitations are such that if First Financial wished to bring a redemption action against CS Assets, it was obliged to file that

action in Baldwin County, where the subject property lies.  To comport with Alabama venue requirements, First Financial could not have filed this action in any state court other than the Circuit Court of Baldwin County.

But this action is now pending in federal court, and it could have been brought in federal court in the first instance because the jurisdictional requirements for diversity of citizenship under 28 U.S.C. § 1332 are clearly satisfied.  The question is whether First Financial could properly have filed this suit in the Northern District of Alabama had it chosen a federal forum in the first instance.  This query turns on federal, not state, venue principles.  After all, state-law venue provisions do not constrain, limit, or dictate the scope or breadth of venue in federal court.[3]  Simply put, then, Alabama venue provisions are irrelevant to the § 1404(a) inquiry into whether the U.S. District Court for the Northern District of Alabama is a forum in which this action "might have been brought" originally.

Under the federal venue statute, a civil action wherein jurisdiction is founded on diversity may be brought, *inter alia*, in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(a)(2); *see also Morgan v. North MS Medical Center, Inc.*, 403 F. Supp.2d 1115, 1122 (S.D. Ala. 2005) ("[U]nder § 1391 a plaintiff does not have to select the venue with the *most* substantial nexus to the dispute, as long as she chooses a venue where a substantial part of the events giving rise to the claim occurred.").  In interpreting this provision, the Eleventh Circuit has opined that "[o]nly the events that directly give rise to a claim are relevant.  And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003).  Thus, "only those acts and omissions that have a close nexus to the wrong are properly weighed in the 'substantial part' analysis."  *Morgan*, 403

---

[3]        *See, e.g., Hollis v. Florida State University*, 259 F.3d 1295, 1296 (11th Cir. 2001) ("[u]pon removal the question of venue is governed by federal law, not state law"); *Murphree v. Mississippi Pub. Corp.*, 149 F.2d 138, 140 (5th Cir. 1945) ("It is hornbook law that where a federal statute fixed the venue of the federal courts, state laws are inapplicable."); *Heft v. AAI Corp.*, 355 F. Supp.2d 757, 772 (M.D. Pa. 2005) (following removal of case to federal court, state statutes "are simply no longer applicable to the question of proper venue"); *R.S. Mikesell Associates v. Grand River Dam Authority*, 442 F. Supp. 229, 231 (D. Okla. 1977) ("States, by their laws, cannot control, expand or restrict the venue of federal district courts.").

F. Supp.2d at 1123 (citations and internal quotation marks omitted); *see also Sterling v. Provident Life and Acc. Ins. Co.*, 519 F. Supp.2d 1195, 1205 (M.D. Fla. 2007) ("Not relevant to determining venue under this approach are events that do not have a close nexus to the wrong," such as acts having an "insubstantial connection with the kinds of events that give rise to the claim").

In deciding whether this action could have been brought in the proposed transferee court, then, the critical inquiry is whether a substantial part of the acts and omissions having a close nexus to, and directly giving rise to, First Financial's redemption cause of action took place in the Northern District of Alabama. First Financial would answer this question in the negative. According to plaintiff, the "events giving rise to the claim" are limited to the foreclosure sale itself, which obviously occurred in the Southern District of Alabama (where the property is), not the Northern District. The law does not support such a crabbed construction of the events giving rise to a redemption cause of action in Alabama. An Alabama claim for redemption requires more than a foreclosure sale. For example, a party seeking to exercise its right of redemption must, after receipt of a statement of lawful charges claimed by the purchaser, tender all such charges before filing suit. *See* Ala. Code § 6-5-252. A right to file a redemption action exists only for a "party so paying or tendering payment." § 6-5-255. Furthermore, a necessary component of a redemption claim is that "the purchaser or his or her vendee or transferee fails or refuses to reconvey to such party entitled and desiring to redeem such title as the party acquired by the sale and purchase." *Id.* By the plain statutory language, then, the events directly giving rise to a redemption cause of action include (a) a foreclosure sale; (b) a payment or tender of payment, after receipt of a statement of lawful charges, by the party seeking to redeem the property; and (c) a failure or refusal by the purchaser to reconvey the property notwithstanding payment or tender of payment.

The foreclosure sale occurred in the Southern District; however, CS Assets asserts, and First Financial does not contest, that many of the remaining events giving rise to this claim took place in the Northern District. According to defendant, First Financial's demand for a statement of lawful charges occurred in Birmingham, which lies in the Northern District of Alabama. So did the parties' dispute about the proper amount of those charges, their ensuing negotiations concerning redemption, and defendant's ultimate refusal or failure to reconvey the property to

First Financial.  In the undersigned's view, these events occurring in the Northern District amount to a substantial part of the events directly giving rise to First Financial's claims herein. On that basis, the Court finds that venue under § 1391(a)(2) would have been proper in the Northern District of Alabama, such that this action "might have been brought" there had First Financial so chosen.  This prong of the § 1404(a) test is satisfied.

### 2.    Whether Interests of Convenience and Justice Favor Transfer.

Having concluded that this action could have been brought in the Northern District of Alabama, the Court now turns to the second step in the § 1404(a) analysis, to-wit: whether prudential and practical considerations of justice, efficiency, fairness and convenience warrant transferring this case to the Northern District.  As discussed *supra*, this aspect of "[t]he analysis under § 1404(a) requires a balancing of practical considerations, which centers on convenience of the parties and witnesses, with the interest of justice, which focuses on fairness and efficiency."  *A.J. Taft*, 291 F. Supp.2d at 1309.  Because a § 1404(a) movant generally bears the burden, it is incumbent on CS Assets (the party seeking transfer) to show that the proposed new forum is more convenient than this one.  *See, e.g., Ricoh*, 870 F.2d at 573.

### a.    Plaintiff's Choice of Forum.

Notwithstanding the laundry list of factors weighed in the § 1404(a) balancing test, courts have generally afforded primacy to the plaintiff's choice of forum, so long as it is a proper venue, in the absence of substantial countervailing considerations.  *See, e.g., Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) ("The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations.").[4]  In this case,

---

[4]    This principle has been echoed by myriad courts in the § 1404(a) context.  *See, e.g., Thermal Technologies, Inc. v. Dade Service Corp.*, 282 F. Supp.2d 1373, 1375 (S.D. Fla. 2003) ("Initially, Plaintiffs' choice of forum should rarely be disturbed."); *A.J. Taft*, 291 F. Supp.2d at 1309 ("in this Circuit, a plaintiff's choice of forum typically is entitled to considerable deference"); *Holmes*, 237 F. Supp.2d at 693 ("[T]he weight to be given the plaintiff's forum choice is significant and will not be disturbed unless the other factors weigh substantially in favor of transfer.") (citation omitted); *E.E.O.C. v. Mustang Mobile Homes, Inc.*, 88 F. Supp.2d 722, 726 (W.D. Tex. 1999) ("In general, a plaintiff's choice of forum is entitled to great weight."); *see generally Williams v. Conseco, Inc.*, 57 F. Supp.2d 1311, 1318 (S.D. Ala. 1999) (observing that "plaintiffs have a virtually unqualified right to select the forum ... and to prosecute [their] own suit[s] in [their] own way to a final determination") (citations and internal

-7-

however, the parties spar as to whether First Financial's choice of forum is entitled to any deference at all because of the procedural posture of this action, and specifically its removal from state court.  Defendant maintains, with no citations to authority, that deference is negated by  removal to federal court, reasoning that First Financial chose the Baldwin County Circuit Court, not the Southern District of Alabama.  Plaintiff responds that defendant's argument is contrary to law, but fails to identify case law that effectively rebuts defendant's position.[5]

Despite the paucity of authorities cited by the parties, the undersigned's research reveals a number of cases tackling this discrete legal question, with the prevailing (and most sensible) view being that the deference to the plaintiff's choice of forum in the *forum non conveniens* context is diminished, but not destroyed, in a removal case, inasmuch as the plaintiff's choice of forum implicates a geographic area, not just a particular courthouse.[6]  As

quotation marks omitted).

[5]       The only two cases cited by First Financial are *Verret v. State of Alabama Dep't of Mental Health*, 2007 WL 2609777 (M.D. Ala. Sept. 6, 2007) and *American Aircraft Sales Int'l, Inc. v. Airwarsaw, Inc.*, 55 F. Supp.2d 1347, 1351 (M.D. Fla. 1999).  Neither is illuminating on this point.  In *Verret*, which was a removal action, the district court noted that typically a plaintiff's choice of forum is afforded considerable deference in the § 1404(a) context; however, the opinion did not indicate whether such deference was being given in that case.  Meanwhile, in *American Aircraft*, which was also a removal case, the court recognized a presumption in favor of the plaintiff's choice of forum but provided no explanation linking that deference to the removal status of the case; indeed, it appears that the *American Aircraft* parties did not question whether removal mitigated the presumption, so the court had no occasion to explore that issue.

[6]       *See, e.g., Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp.2d 941, 947 (S.D. Ohio 2002) (plaintiff's choice of forum "is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum, which was state court," but even then, plaintiff's choice remains "relevant to the issue of transfer"); *Len Tran, Inc. v. Cal-Sungold, Inc.*, 2008 WL 2025287, *3 (M.D. Fla. May 9, 2008) ("The deference given to a plaintiff's choice of forum diminishes if the plaintiff arrives in the district court by virtue of removal."); *but see Improvita Health Products, Inc. v. F & F Foods, Inc.*, 2007 WL 1577789, *3 (N.D. Ohio May 31, 2007) ("Where as here, a case has been removed to federal court from state court ..., the plaintiff's choice of forum loses its presumptive effect.").  Certainly, various courts have continued to weigh the plaintiff's choice of forum in the § 1404(a) calculus even in removal actions.  *See, e.g., Lentz v. Eli Lilly and Co.*, 464 F. Supp.2d 35, 37 (D.D.C. 2006); *Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc.*, 2007 WL 1560212, *5 (N.D. Ill. May 29, 2007); *Wallace v. Mercantile County Bank*, 2006 WL 3302490, *5 (E.D. Pa. Nov. 9, 2006).

one district court persuasively reasoned, "for § 1404(a) purposes a chosen venue encompasses both federal and state courts. ... [A plaintiff's geographic] choice does not lose all relevance solely because [plaintiff] initially brought the case in state court and [defendant] chose to remove it to the federal court encompassing that county.  To hold otherwise would be to create the anomalous situation that a plaintiff's geographic choice is entitled to greater deference based on whether or not it sues in federal court first or whether it has the fortuity of suing a non-diverse defendant in state court."  *Superior Precast, Inc. v. Safeco Ins. Co. of America*, 71 F. Supp.2d 438, 446 (E.D. Pa. 1999).  Accordingly, this Court will afford some weight (albeit neither conclusive nor presumptive deference) in the § 1404(a) balancing analysis to First Financial's decision to prosecute this action in southern Alabama, not northern Alabama.  The Court now turns to the remaining factors.

> b.     *Other Convenience and Fairness Factors.*

The convenience-based factors (*e.g.*, convenience of parties and witnesses, location of documents, ease of access to sources of proof, etc.) do not warrant transferring this case to the Northern District of Alabama.  As an initial matter, the property that is the subject of this redemption action is located in the Southern District, so it is difficult to fathom why it would be more convenient for the trial to be held in the Northern District (more than 250 miles away from the property being redeemed) than in the Southern District (roughly 50 miles away from that property).  Furthermore, the only attorneys to have appeared for either First Financial or CS Assets in this action are based in the Southern District, not the Northern District.   It hardly would seem convenient or cost-effective either to force those attorneys to make the 500-mile round trip to the Northern District for court appearances, or to oblige the parties to retain additional or different attorneys in the Northern District, rather than those they initially selected to represent their interests herein.  An additional consideration is that First Financial chose to prosecute this case in southern Alabama, so obviously it deems that forum more convenient than, or at least equally convenient to, a Northern District forum.  And CS Assets is a Nevada limited liability corporation with its principal place of business in San Antonio, Texas (*see* doc. 1, at 2), such that a Southern District of Alabama forum should be no more or less convenient for it than a Northern District of Alabama forum.  Based on these considerations, the undersigned is not

convinced that the Northern District constitutes a more convenient forum for this litigation.[7]

The "efficiency" and "interest of justice" factors likewise do not weigh in favor of a transfer. CS Assets' argument as to these factors is that, given that the claims pending in the Northern District between West Beach and CS Assets relate to the same foreclosure sale, the same indebtedness, and the same real property at issue here, the interests of justice favor transferring this lawsuit to the Northern District so that the two cases can be consolidated and resolved in a single proceeding. CS Assets' position in this regard is extraordinarily difficult to reconcile with its own representations earlier in these proceedings. In opposing West Beach's attempt to intervene herein, CS Assets stated to this Court that "West Beach has no legally cognizable interest relating to this action. There are no questions of law or fact common to any claims or defenses of the parties to this action." (Doc. 9, at 1.) If it is CS Assets' view that West Beach has no interest relating to this action, and that there are no common questions of law or fact in this case pertaining to the West Beach claims in the Northern District case, then the Court is at a loss to understand why CS Assets now thinks it would be more efficient to lump this action together with the West Beach litigation in the Northern District. CS Assets has failed to

---

[7]      Movant's arguments to the contrary are not persuasive. In particular, while CS Assets points out that the lawyers who conducted the pre-lawsuit redemption price negotiations are in the Northern District, it admits in the next breath that "these lawyers for the parties may not testify." (Doc. 23, at 5.) If these Northern District lawyers will not be called as witnesses and are not counsel of record in this case, then their convenience is of no moment for § 1404(a) purposes. CS Assets also asserts that First Financial's documents related to the West Beach mortgage and the property valuation are located in the Northern District, but makes no showing that (a) these documents are voluminous or (b) it would be inconvenient for CS Assets (the movant here) if First Financial had to ship those documents to the Southern District for trial. No party attempts to delineate with any precision the locations of the witnesses who are likely to be called at trial. At most, CS Assets suggests that First Financial's witnesses (not movant's own witnesses) may reside in the Northern District, as well as in Florida and Texas, and that certain unidentified officers of certain lenders in the Northern District "may testify" on unspecified subjects. It is unclear why CS Assets is concerned about the convenience of First Financial's witnesses. Meanwhile, First Financial indicates that it anticipates using "local witnesses" to testify as to property use and valuation, which CS Assets argues are not even relevant issues to this dispute. Be that as it may, based on movant's flimsy showing as to who the likely trial witnesses are and where they are located, the Court cannot find that the convenience of the witnesses would be materially advanced by transferring this action to the Northern District of Alabama.

explain the shifting positions it has advocated before this Court.  Furthermore, the probability of consolidation in the event of transfer does not seem high, given the disparity in the posture of these cases.  Specifically, discovery is slated to conclude in the Northern District proceedings in less than three weeks, while the discovery deadline in this case remains more than four months away.[8]

## III.   Conclusion.

Simply put, after careful consideration of the parties' submissions and all portions of the court file deemed relevant, the undersigned is of the opinion that any incremental gains in convenience or efficiency that might be derived from transferring this action to the Northern District of Alabama are too modest, too attenuated, and too speculative to justify employing the § 1404(a) transfer machinery here.  Movant simply has not shown that the Northern District of Alabama would be a more convenient, more efficient, more fair or more just situs for these proceedings than this District Court would be.  For these reasons, the Court in its discretion **denies** defendant's Motion to Transfer (doc. 22).

DONE and ORDERED this 4th day of May, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[8]     To the extent that CS Assets would rely on a transcript of a telephone conference in the Northern District litigation from February 3, 2009, to show that Judge Propst (who is presiding over that case) is receptive to consolidating the cases, the Court cannot take such a leap.  The conference took place three months ago.  That Judge Propst may have been willing to entertain consolidation of these matters back in early February does not imply that the same holds true today, particularly where the discovery deadline in that case looms near and CS Assets waited until April 3, 2009 before filing its § 1404(a) motion in this case.  Besides, the February 3 transcript includes a telling acknowledgment by CS Assets' counsel in the Northern District case that "we're in a much more advanced stage with this case" than the litigants are in the action pending here.  (Doc. 28, Exh. B, at 23.)  The differing stages of the two cases suggest that consolidating them now would serve only to delay resolution of the "much more advanced" Northern District litigation by waiting for the much later-filed Southern District litigation to catch up.  That fact dissipates any efficiency gain that might otherwise result from the pendency of related proceedings in the proposed transferee court.  *Compare Allegheny Technologies, Inc. v. Strecker*, 2007 WL 852547, *15 (W.D. Pa. Mar. 16, 2007) ("the pendency of a related case in its early phases in the transferee forum is a powerful reason to grant a change of venue") (citation omitted).

-11-