IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FIRST FINANCIAL BANK,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CIVIL ACTION 08-0731-WS-M |
| | ) |
| **CS ASSETS, LLC,** | ) |
| | ) |
| Defendant. | ) |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Voluntary Dismissal (doc. 71). Defendant opposes the Motion, which has been briefed and is ripe for disposition.

**I.   Relevant Background.**

Plaintiff, First Financial Bank, brought this action against defendant, CS Assets, LLC, pursuant to the Alabama redemption mechanism prescribed by Alabama Code §§ 6-5-247, *et seq.* In brief, First Financial and CS Assets were both mortgagees for the same five parcels of property located near Little Lagoon in Gulf Shores, Alabama. When the mortgagor defaulted on its obligations to both lenders, CS Assets (the senior mortgagee) foreclosed on those parcels, after which First Financial (the junior mortgagee) invoked its right of redemption. Being unable to agree on a proper redemption price, the parties called upon this Court to carve a path through the arcane and enigmatic annals of Alabama redemption law to resolve their dispute as to numerous elements of the redemption price calculation. Via published Order (doc. 70) entered on January 13, 2010, the undersigned obliged, in the context of deciding the parties' extensive cross-motions for summary judgment. *See First Financial Bank v. CS Assets, LLC*, --- F. Supp.2d ----, 2010 WL 114531 (S.D. Ala. Jan. 13, 2010). After resolving the parties' numerous legal disagreements concerning the scope, form and application of Alabama redemption law to various dimensions of the price calculus, the Court fixed the redemption price for the five subject parcels at $2,733,069.91. This figure was situated between the redemption price of $1,612,695 proposed by First Financial, and the $3,272,156.40 value championed by CS Assets. The effect

of the January 13 Order was to resolve all triable issues joined in this litigation, leaving no outstanding claims or defenses for trial.

At the inception of this litigation, First Financial deposited funds representing all or nearly all of the redemption price demanded by CS Assets in the court registry.  As a result, the Clerk of Court is presently holding the sum of $3,207,995.65, plus interest accrued since the February 27, 2009 deposit date.  (*See* docs. 14 & 18.)[1]  Because First Financial had insinuated in summary judgment briefing that it might seek to dismiss its redemption claim if the price were set at a level higher than it wished to pay, the January 13 Order neither directed immediate disbursement of the deposited funds nor ordered CS Assets to deliver a deed to First Financial, but instead allowed the parties to be heard as to the propriety of disbursement of funds and entry of final judgment.  *See First Financial*, 2010 WL 114531 at *19 n.55.[2]

True to form, the parties filed a Joint Report (doc. 72) in which they vigorously disagreed with each other as to whether the January 13 Order binds First Financial to finalize the redemption of the subject parcels.  Contemporaneously, First Financial filed a Motion for Voluntary Dismissal (doc. 71) contending that it should be permitted to take a voluntary dismissal of its redemption claim with prejudice, such that CS Assets would retain title to the parcels and the deposited funds would be returned to First Financial.  By way of explanation, First Financial asserted that the redemption price set by the Court is "much higher than

---

[1]   In its Complaint, First Financial referenced this deposit as having been made "for the purpose of securing and effecting the redemption of the said lands ... at a price to be fixed by this Court." (Complaint, ¶ 7.)  First Financial indicated, however, that "if plaintiff should have mistakenly deposited an insufficient amount, it offers to pay the balance determined to be due." (*Id.*)  Plaintiff has apparently thought better of these representations in the interim.  At this time, First Financial is not only unwilling to pay funds in addition to those previously tendered, but is also uninterested in going forward with a redemption that would commit only 85.2% of the funds tendered at the outset of this litigation, with the remainder (plus interest) to be returned to it.

[2]   Alabama courts have entered judgments in the redemption context that provide specific instructions for payment of the balance of the redemption price by the redemptioner and for delivery of the deed by the party against whom redemption has been effected.  *See, e.g., Nnaife v. Pitt*, 883 So.2d 682, 686-87 (Ala.Civ.App. 2003).  This Court did not follow that course in the case at bar because of First Financial's suggestion that it might not wish to proceed with redemption of the subject parcels if the price tag were above some undisclosed figure.

anticipated" (albeit nearly $500,000 below the tendered sum) and that "redemption of Parcels A through E at the price fixed by the Court would violate sound banking practices" in the opinion of First Financial's representatives. (Doc. 71, ¶¶ 1-2.) CS Assets opposes this Motion, and both parties have received a full and fair opportunity to be heard in connection with same.

## II.     Analysis.

As noted *supra*, First Financial is requesting that the Complaint be dismissed with prejudice pursuant to Rule 41(a)(2), Fed.R.Civ.P. Although no separate motion has been filed, First Financial also seeks the return of all funds it deposited with the Clerk of Court during the pendency of this action.

By its terms, Rule 41(a)(2) provides that, in the absence of either a stipulation of dismissal signed by all parties or a notice of dismissal filed prior to a defendant's answer or motion for summary judgment, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *Id.* "The basic purpose of Rule 41(a)(2) is to freely permit the plaintiff, with court approval, to voluntarily dismiss an action so long as no other party will be prejudiced." *Versa Products, Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1327 (11th Cir. 2004) (citation omitted). "In most cases, a voluntary dismissal should be granted unless the defendant will suffer clear legal prejudice, other then [*sic*] the mere prospect of a subsequent lawsuit, as a result. ... The crucial question to be determined is, Would the defendant lose any substantial right by the dismissal." *Pontenberg v. Boston Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) (citations and emphasis omitted); *see also In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1259 (11th Cir. 2006) (pointing out that "Rule 41(a)(2) exists chiefly for protection of defendants"). Furthermore, the Eleventh Circuit has explained that "the mere attempt to avoid an adverse summary judgment ruling in and of itself, particularly where there is no evidence of bad faith, does not constitute plain legal prejudice" warranting denial of a Rule 41(a)(2) motion. *Pontenberg*, 252 F.3d at 1258.

CS Assets insists that it would suffer legal prejudice if this case were dismissed at this juncture. Although CS Assets mentions in passing its six-digit legal fees and the parcels' decline in market value during the lifespan of this litigation, it goes on to state that "[t]he real prejudice to CS Assets of a dismissal at this late date is the deprivation of the redemption." (Doc. 76, at

8.)³  In other words, the prejudice claimed by CS Assets is that it would be deprived of the benefit of selling Parcels A through E to First Financial at the redemption price fixed by this Court on summary judgment.⁴  It thus seeks to carry out the redemption transaction under the financial terms specified in the January 13 Order.  According to CS Assets, "[a]ny final judgment short of exchanging the property for the funds tendered into the Registry of the Court is contrary to Alabama law."  (Doc. 76, at 8.)  In effect, then, defendant is claiming entitlement to specific performance of First Financial's proposed redemption of Parcels A through E at the price established on summary judgment.

The fundamental defect with CS Assets' position is that it misapprehends the effect of a trial court's setting of a redemption price, and imputes legal rights to a redemption defendant that no published Alabama authority has ever recognized.  As the January 13 Order emphasized, the redemption process is purely a creature of Alabama statute; therefore, the Court looks to Alabama law for guidance as to the scope, breadth, form, contours, limitations and implications of the redemption remedy.  *See First Financial*, 2010 WL 114531 at *5.  Alabama courts have spoken clearly on at least two occasions as to the precise issue presented by the parties at this time, to-wit: Whether CS Assets can force First Financial to consummate the redemption of the five parcels at the price fixed by this Court on summary judgment.  In particular, the Alabama Supreme Court has expounded on the redemption mechanism in the following terms:

> "Although a judgment ordering a redemption under § 6-5-237 is, in a sense, an adjudication of a sum of money in favor of the defendant, ***in effect it merely allows the plaintiff to purchase the property from the defendant within a***

---

³  Defendant neither contends nor develops arguments that its legal fees incurred in this action or the deterioration of the parcels' market value during these proceedings satisfy the threshold of legal prejudice, so as to warrant denial of First Financial's Rule 41(a)(2) motion.  Because CS Assets has elected to frame the "legal prejudice" debate solely in terms of the alleged deprivation of redemption, the Court will not *sua sponte* assess whether burgeoning legal fees and adverse exogenous real estate market forces might constitute legal prejudice in the circumstances presented here.

⁴  Although that redemption price is more than a half million dollars below that which CS Assets had demanded, CS Assets nonetheless displays profound eagerness to jettison the property even at this discounted price, presumably reflecting the plunging local real estate market conditions in the intervening period.

> ***specified time at a fixed dollar amount***.  Failure to comply with the terms of the judgment results only in the plaintiff's losing his right of redemption.  ***The defendant cannot enforce payment***."

*Rhoden v. Miller*, 495 So.2d 54, 58 n.3 (Ala. 1986) (emphasis added).

More recently, the Alabama Supreme Court presented this notion as settled law, reiterating that "a judgment ordering redemption of real property merely allows the plaintiff ... to purchase the property from the defendant ... within a specified time at a fixed dollar amount, with the condition that if the plaintiff fails to comply with the terms of the judgment, then the plaintiff loses the right of redemption."  *Byrd v. Southeast Enterprises, Inc.*, 812 So.2d 266, 268 n.2 (Ala. 2001).  *Rhoden* and *Byrd* thus lend unequivocal support to First Financial's position that this Court's fixing of a redemption price does not obligate a plaintiff to follow through and complete the purchase of the subject real property, but merely provides the plaintiff with the option of doing so.[5]  If, as *Rhoden* and *Byrd* indicate, a defendant in a redemption action cannot compel the redemptioner to complete the purchase of the specified property at the specified price, then CS Assets' claimed legal prejudice (*i.e.*, "the deprivation of the redemption") is illusory to the point of being nonexistent, and cannot justify denial of plaintiff's Rule 41(a)(2) motion.

Notwithstanding these authorities, however, CS Assets urges the Court to deviate from the *Rhoden* / *Byrd* approach for three independent reasons.  First, CS Assets suggests that First Financial irrevocably committed itself to redeeming the parcels at whatever price the Court might fix when it tendered the disputed redemption amount to the Clerk of Court contemporaneously with the filing of its Complaint.  In that regard, CS Assets cites case law addressing the concept of "tender," as well as Alabama authorities (and the January 13 Order in this case) setting the "date of redemption" for interest computation purposes as being the date on which tender is made.  In effect, then, CS Assets would distinguish *Rhoden* and *Byrd* because, unlike in those cases, First Financial had already tendered more than the full redemption amount

---

[5]  More broadly, it bears remembering that, under Alabama law, "[t]he statutory rights of redemption given or conferred by this article are mere personal privileges and not property or property rights." Ala. Code § 6-5-250.  This principle is in tension with CS Assets' position that the Alabama redemption process confers upon it an absolute entitlement to demand that a now-unwilling buyer follow through with redemption at the judicially fixed price.

before this Court set a price. But Alabama courts have never recognized (or even hinted at) such a distinction, and defendant makes no pretense of explaining why this arbitrary dichotomy (*i.e.*, penalizing redemptioners who tender sufficient funds at the outset by forcing them to complete the purchase at whatever price the trial court might set, while allowing all other redemptioners to opt out with no penalty if the judicially fixed price is higher than the plaintiff wishes to pay) would be a sensible, or even rational, result. There is no reason to believe that the Alabama Supreme Court in *Rhoden* or *Byrd* would have embraced materially different rules for redemption judgments where adequate tender has been made than in cases where it has not, and certainly nothing in the broad language used in those opinions lends credence to such an illogical qualifier.[6]

Second, CS Assets seeks to brush aside the pronouncements of *Rhoden* and *Byrd* as dicta

---

[6] Equally unavailing are defendant's arguments relating to tender and the date of redemption. As to the former, CS Assets cites no authority for the proposition that First Financial's tender of funds to the Clerk of Court absolutely bound it to pay whatever redemption price might be set. The clear weight of the authority provides that the effect of tender was to cut off interest accrual, but that First Financial has always retained title to those funds. *See generally Kennedy v. Boles Inv., Inc.*, --- So.3d ----, 2010 WL 876822, *8 (Ala. Mar. 12, 2010) (explaining general rule that only effect of tender of amount due is to release payor from subsequent accrual of interest charges); *Heck & Paetow Claim Service, Inc. v. Heck*, 286 N.W.2d 831, 835 (Wis. 1980) (collecting authorities from other jurisdictions for proposition that when party tenders money by depositing it with the court, "title to that money does not pass to the opposing party, but remains in the party making the tender"); *McKendrick v. Lyle Cashion Co.*, 105 So.2d 480, 482 (Miss. 1958) ("a tender is confined to the terms upon which it is made" and "should not be broadened by the courts"); *Republic Ins. Co. v. Highland Park Independent School District*, 123 S.W.2d 784, 790 (Tex.Civ.App. 1938) ("where one is seeking affirmative relief in contrast to defending against a claim ... title to the deposit remains in the tenderer"). If, as these cases suggest, the tendered funds belong to First Financial, then First Financial remains free to withdraw them rather than utilizing them to pay an undesirable redemption price. As for defendant's contention that this Court's previous finding that the "date of redemption" was the date of tender necessarily means that plaintiff was locked into a path of redemption from that date forward, CS Assets reads far too much into that determination. The January 13 Order followed *Pankey v. Daugette*, 671 So.2d 684 (Ala.Civ.App. 1995), which explained that "[t]he date of redemption is important for the computation of interest" and that when tender is made, "the date of redemption is deemed to be the date the complaint to redeem was filed." *Id.* at 689. But *Pankey* does not hold, and cannot reasonably be read as supporting a holding, that the date of redemption for interest computation purposes equates to a point of no return after which the redemptioner is unconditionally bound to redeem the property at whatever price the court sets.

that this Court should simply disregard. This argument misses the point. "Although dicta is not binding, it can provide federal courts with insight into a state court's thinking." *LeFrere v. Quezada*, 582 F.3d 1260, 1267 (11th Cir. 2009); *see also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) ("a federal court attempting to forecast state law must consider whatever might lend it insight, including relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand") (citation and internal quotation marks omitted). As emphasized *supra*, First Financial's redemption cause of action arises exclusively under Alabama law; therefore, this Court is duty-bound to administer that cause of action as Alabama's highest court would. Although the Alabama Supreme Court has not issued an express holding as to a redemptioner's ability to walk away from a court-determined redemption price not to its liking, it has twice recognized in clear statements (albeit dicta) that redemptioners may do just that. Such pronouncements are extremely reliable data and compelling evidence of how Alabama courts would handle CS Assets' efforts to force the redemption transaction to proceed. Given the *Rhoden* court's blunt assessment that "[t]he defendant cannot enforce payment" in the redemption context, 495 So.2d at 58 n.3, it is hard to imagine a clearer, more reliable indicator of the Alabama Supreme Court's views on this issue.[7] As a federal court tasked with ascertaining from all available data what the relevant state law is, this Court must not and will not turn its eyes away from the directly on-point statements in *Rhoden* and *Byrd* simply because they were not postured as holdings.

Third, defendant argues that public policy considerations favor a result contrary to the *Rhoden* / *Byrd* approach. In particular, CS Assets bemoans the likelihood that redemptioners, if under no compunction to complete a purchase, may thoughtlessly initiate and terminate redemption proceedings, heedless of the adverse repercussions for the party against whom redemption is sought. In this manner, CS Assets suggests that the redemption vehicle may be

---

[7] This conclusion is strengthened by the principles that Alabama's redemption statutes are "remedial in nature" and must be afforded "a liberal interpretation so as to effectuate their objectives." *Spencer v. West Alabama Properties, Inc.*, 564 So.2d 425, 427 (Ala. 1990); *see also Jim Walter Homes, Inc. v. Blake*, 544 So.2d 161, 164 (Ala. 1989) ("Redemption statutes, however, are to be construed most favorably to the redemptioner.").

abused as a source of advisory opinions or a tool of harassment that wastes judicial and litigant resources.  The problem, of course, is that this Court is not painting on a blank canvas.  This Court's objective is not to decide what the optimal redemption procedure would be, working in a vacuum; rather, the undersigned is charged with ascertaining -- and following -- Alabama's redemption protocol.  The Alabama Supreme Court having unambiguously recognized a redemptioner's ability to walk away from a court-ordered redemption price with only a loss of redemption privileges, this Court cannot substitute its balancing of applicable policy considerations for that of Alabama's highest court, but must instead follow the clear guidance of that tribunal in implementing the redemption remedy under state law.

### III.     Conclusion.

For all of the foregoing reasons, the Court finds that defendant has failed to establish that it would suffer legal prejudice if plaintiff's motion for voluntary dismissal were granted.  Although CS Assets claims legal prejudice in the form of "deprivation of the redemption" (*i.e.*, inability to force First Financial to complete the redemption of Parcels A through E for the $2,733,069.91 price tag judicially computed on summary judgment), this cannot be legal prejudice because the Alabama Supreme Court recognizes First Financial's right to forfeit the redemption and walk away from the transaction, even after the redemption price has been fixed by court order.  Because Alabama law confers upon CS Assets no entitlement to enforce payment of the redemption amount, and because First Financial has plainly exercised its privilege to forfeit redemption for the judicially determined price here, CS Assets would sustain no legal prejudice by the deprivation of the redemption if this action were dismissed with prejudice at this time.

Accordingly, plaintiff's Motion for Voluntary Dismissal (doc. 71) is **granted**, and this action is **dismissed with prejudice** pursuant to Rule 41(a)(2), Fed.R.Civ.P.[8]  The only remaining

---

[8]     Even if plaintiff's reliance on the Rule 41(a)(2) voluntary dismissal mechanism were somehow faulty in this setting, the practical result would be unchanged.  In the absence of Rule 41(a)(2) dismissal, this Court would follow the Alabama Supreme Court's guidance in *Rhoden* and *Byrd* by entering a judgment in accordance with the January 13 Order fixing the redemption price.  That judgment would allow (but not require) First Financial to purchase Parcels A through E from CS Assets within a specified time frame for the fixed dollar amount of $2,733,069.91, on the condition that if First Financial failed to comply with the terms of that

housekeeping detail concerns the payout of the funds tendered by plaintiff at the inception of this litigation. Plaintiff's counsel is **ordered**, on or before **April 15, 2010**, to file an appropriate motion for disbursement of the funds being held in the registry of this District Court, including instructions identifying the payee(s) and the address to which the check is to be sent.[9] On or before the date of filing that motion, plaintiff's counsel must contact the undersigned's chambers to provide the tax identification number for each payee.

DONE and ORDERED this 8th day of April, 2010.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

judgment, then First Financial would lose its right of redemption and the deposited funds in the registry of this District Court would be returned to it, with CS Assets retaining the subject real property. First Financial having stated with crystalline clarity that it does not wish to complete the redemption at that price, entry of such a judgment would be an empty formality, resulting in the return of the deposited funds to First Financial just as this Court is directing here. Ultimately, then, whether plaintiff's Rule 41(a)(2) motion is granted or denied, the ultimate outcome (*i.e.*, that First Financial gets its deposited funds back, CS Assets keeps Parcels A through E, and the right of redemption has been lost) would be identical. Either way, CS Assets would have no right and no ability under Alabama redemption law to compel First Financial to exercise its personal privilege of redemption at the price fixed by the Court. Any suggestion that First Financial should be required to pay CS Assets' attorney's fees and costs as a condition of dismissal fails for the same reason, especially in the absence of even a scintilla of evidence that First Financial's decisions to pursue this action but not to proceed with redemption after entry of the January 13 Order were motivated by bad faith.

[9] In accordance with the fee schedule promulgated under 28 U.S.C. § 1914, plaintiff is reminded that the Clerk of Court will withhold a fee of 10% of the total interest earned on these funds while they were on deposit in the Bank of America money market account in connection with this matter.