# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **FIRST FINANCIAL BANK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 08-0731-WS-M |
| | ) |
| **CS ASSETS, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter comes before the Court on plaintiff's Motion for Disbursement of Funds Held in Registry (doc. 79) and defendant's Motion to Stay and to Relieve Appellant from Bond Requirement (doc. 88). Both motions have been briefed and are ripe for disposition.[1]

**I.  Relevant Background.**

Plaintiff, First Financial Bank, brought this action against defendant, CS Assets, LLC, for redemption of real property pursuant to Alabama Code §§ 6-5-247 *et seq*. At the outset of these proceedings, First Financial deposited the sum of $3,207,995.65 in the registry of this District Court. Those funds have been maintained by the Clerk of Court in an interest-bearing account for the duration of this litigation, awaiting disbursement instructions.

From its inception, the parties' dispute centered on the proper calculation of a redemption price for certain parcels of land that First Financial sought to redeem. Following extensive cross-motions for summary judgment, wherein virtually every conceivable component of the redemption price was bitterly contested, the undersigned entered an Order (doc. 70) dated January 13, 2010, fixing the redemption price for the subject parcels at $2,733,069.91. This

---

[1]  Also pending is plaintiff's Motion for Leave to File Controverting Affidavit (doc. 98). In the exercise of its discretion, the Court **grants** that Motion and will consider the short rebuttal Affidavit of B.K. Goodwin, III, appended to the Motion as an exhibit.

figure was situated between those proposed by First Financial (which advocated a redemption price of $1,612,695) and CS Assets (which contended that the correct price was $3,272,156.40).

In the wake of the January 13 Order setting the redemption price, the parties clashed over whether First Financial had the right to walk away from the transaction, or whether its invocation of the redemption mechanism irrevocably entitled CS Assets (at its option) to compel First Financial to consummate the deal at the judicially-fixed price. CS Assets endeavored to force First Financial to proceed with the sale (even though the redemption price was more than a half million dollars below the valuation that defendant had demanded); meanwhile, First Financial sought a voluntary dismissal and return of its deposited funds (even though it had originally indicated that it was willing to pay more than the $3.2 million deposited in order to complete the redemption process, and even though the Court had set the redemption price at a figure substantially below that original deposit amount). On April 8, 2010, the undersigned entered another Order (doc. 78) observing that under Alabama case authorities, a redemption judgment "merely allows the plaintiff to purchase the property from the defendant within a specified time at a fixed dollar amount. … The defendant cannot enforce payment." *Rhoden v. Miller*, 495 So.2d 54, 58 n.3 (Ala. 1986). Because the Alabama substantive law that created the redemption cause of action has been interpreted by Alabama's highest court as authorizing a redemption plaintiff to do precisely what First Financial seeks to do in this case, the April 8 Order concluded that First Financial was permitted to forfeit its right to redemption after judicial computation of the price, and that CS Assets had no power to compel specific performance of a redemption transaction which First Financial had abandoned. In the absence of any showing of legal prejudice to CS Assets, the April 8 Order granted First Financial's motion for voluntary dismissal, dismissed this action with prejudice, and directed further filings by the parties to resolve the final remaining issue of return of registry funds to First Financial.[2]

On May 6, 2010, CS Assets filed a Notice of Appeal (doc. 81), whereby it appealed to the Eleventh Circuit both the January 13 Order adjudicating the cross-motions for summary judgment and the April 8 Order granting plaintiff's motion for voluntary dismissal. That appeal

---

[2] CS Assets' "legal prejudice" argument was that it would suffer "deprivation of the redemption" if First Financial were permitted to take a voluntary dismissal. But this could not be legal prejudice because CS Assets had no legal right to compel redemption under Alabama law.

remains pending today. In the meanwhile, First Financial has asked this Court to disburse the more than $3.2 million in registry funds on deposit with the Clerk of Court. By contrast, CS Assets argues that the previous Orders of this Court should be stayed, that the Clerk should continue to hold the subject funds pending conclusion of the appeal, and that CS Assets should be excused from posting a supersedeas bond in the interim. The questions of whether the funds in the court registry should now be released to First Financial and whether any bond is necessary to stay such disbursement are thus squarely presented.[3]

## II. Analysis.

The parties appear to be in agreement that CS Assets' request for a stay of this Court's dismissal order and the concomitant disbursement of funds held by the Clerk of Court is governed by Rule 62(d), Fed.R.Civ.P. That rule provides that, when appeal is taken, "the appellant may obtain a stay by supersedeas bond. … The stay takes effect when the court approves the bond." *Id.* As a general proposition, then, if CS Assets desires a stay of rulings allowing First Financial to take a voluntary dismissal and to recover the $3.2 million in tendered funds, then it may obtain one as of right upon payment of adequate supersedeas bond approved by the Court.[4] The purpose of such a bond is not only to "protect[] the prevailing plaintiff from

---

[3] Notwithstanding the pendency of CS Assets' appeal, this Court possesses jurisdiction to consider the propriety of a stay. *See, e.g., Matter of Miranne*, 852 F.2d 805, 806 (5th Cir. 1988) ("we are persuaded that the district court retained jurisdiction to grant appellant's request for a stay despite the fact that a notice of appeal … was filed prior to the request for a stay," particularly given "general principle that an application for a stay of the judgment or order of a district court should ordinarily be made in the first instance in the district court"); *Rakovich v. Wade*, 834 F.2d 673, 674 (7th Cir. 1987) ("a notice of appeal does not deprive the district court of jurisdiction over a motion for stay of its judgment"). As such, it is appropriate for the undersigned to address CS Assets' Rule 62(d) motion at this time. *See* Rule 8(a)(1)(A), Fed.R.App.P. (party seeking stay of judgment or order of district court pending appeal must ordinarily move first in the district court).

[4] *See, e.g., Eurasia Int'l, Ltd. v. Holman Shipping, Inc.*, 411 F.3d 578, 585 (5th Cir. 2005) ("Fed.R.Civ.P. 62(d) provides that a party is entitled to an automatic stay of proceedings to enforce a judgment upon appeal when it posts a supersedeas bond."); *Frommert v. Conkright*, 639 F. Supp.2d 305, 308 (W.D.N.Y. 2009) ("the party posting the bond is entitled to a stay as of right; the court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond"); *New Access Communications LLC v. Qwest Corp.*, 378 F. Supp.2d 1135, 1138 (D. Minn. 2005) ("An appellant may request and obtain a stay of judgment pending appeal as a matter of right upon posting a supersedeas bond.").

the risk of a later uncollectible judgment," but also to "compensate[] him for delay in the entry of final judgment." *Brinkman v. Department of Corrections of State of Kan.*, 815 F. Supp. 407, 408 (D. Kan. 1993) (citations omitted); *see also Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190-91 (5th Cir. 1979) ("The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. … [T]he bond secures the prevailing party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal."); *United States v. Cowan*, 535 F. Supp.2d 1135, 1148 (D. Haw. 2008) ("The supersedeas bond is meant to secure the appellee from any resulting loss from the stay."); *Perez Rodriguez v. Rey Hernandez*, 304 F. Supp.2d 227, 229 (D.P.R. 2004) (supersedeas bond requirement "compensates [appellee] for the delay in the entry of final judgment").

CS Assets is requesting a Rule 62(d) stay that would prevent disbursement of registry funds back to First Financial, as this Court has effectively ordered, pending the conclusion of CS Assets' appellate challenge to those rulings.[5] The wrinkle in this case is that CS Assets has not posted a supersedeas bond and has asked to be relieved of the obligation to post any such bond. Applicable authorities explain that in the normal, typical case, a supersedeas bond is a mandatory condition for a Rule 62(d) stay, and that relief from that prerequisite may be granted only upon an affirmative showing of good cause by the appellant. Indeed, "[i]f a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively

---

[5] It should be noted that a stay is not necessary to preserve CS Assets' appellate rights as to the challenged rulings in this case. Even if the registry funds were disbursed to First Financial at this time, CS Assets would remain free to pursue its appeal of this Court's determinations that those funds properly belong to First Financial and that First Financial cannot be compelled to redeem the subject parcels. *See, e.g., Ohio Nat'l Life Assur. Corp. v. Langkau ex rel. Estate of Langkau*, 2009 WL 3824789, *3 (11th Cir. Nov. 17, 2009) (where district court disbursed interpleaded funds, ensuing appeal was not moot because appellant "can recover the proceeds if the court determines on remand that he is the proper recipient of the insurance proceeds"); *Strong v. Laubach*, 443 F.3d 1297, 1299 (10th Cir. 2006) ("A judgment debtor who is unable or is unwilling to post a supersedeas bond retains the right to appeal even if the judgment is executed.").

demonstrate the reasons for such a departure." *Poplar Grove*, 600 F.2d at 1191.[6] In evaluating whether to relieve an appellant of the bond requirement, district courts have substantial discretion. *See, e.g., In re Initial Public Offering Securities Litigation*, --- F. Supp.2d ----, 2010 WL 2505677, *1 (S.D.N.Y. June 17, 2010) ("It is within the district court's discretion to determine the amount and nature of the bond.") (citation omitted); *Marcoux v. Farm Service and Supplies, Inc.*, 290 F. Supp.2d 457, 485 (S.D.N.Y. 2003) ("Whether to grant a stay without a supersedeas bond is a matter that remains within this Court's sound discretion."); *Brinkman*, 815 F. Supp. at 408 ("District courts have inherent discretionary authority in setting supersedeas bonds.").

As grounds for evading the "usual requirement" of a supersedeas bond in this case, CS Assets does not assert that payment of a bond would impose a financial hardship or would somehow be impracticable. Instead, CS Assets urges the Court to dispense with the bond requirement here because (i) the subject funds are on deposit in the court registry, and are therefore quite safe and readily available to First Financial should CS Assets' appeal fail; (ii) preservation of the status quo favors the non-disbursement of registry funds pending appeal;[7] and (iii) First Financial will not be harmed by the holdback of those funds pending appeal because they are in an interest-bearing account.

---

[6] *See also Athridge v. Iglesias*, 464 F. Supp.2d 19, 23-24 (D.D.C. 2006) ("a full supersedeas bond should be the requirement in normal circumstances," from which the district should not deviate unless the movant "objectively demonstrate[s] the reasons for such a departure") (citations omitted); *Marcoux v. Farm Service and Supplies, Inc.*, 290 F. Supp.2d 457, 485 (S.D.N.Y. 2003) ("Because a supersedeas bond is designed to protect the appellee, the party seeking the stay without a bond has the burden of providing specific reasons why the court should depart from the standard requirement of granting a stay only after posting of a supersedeas bond in the full amount") (citation omitted); *Holland v. Law*, 35 F. Supp.2d 505, 506 (S.D. W. Va. 1999) ("the power of the court to waive the supersedeas bond requirement should only be exercised in extraordinary circumstances") (citation and internal quotation marks omitted); *Brinkman*, 815 F. Supp. at 408 (waiver of supersedeas bond requirement "occurs only upon the appellant objectively demonstrating good cause").

[7] This contention is a *non sequitur*. At its core, the issue before the Court is whether CS Assets must post a supersedeas bond in order to obtain a Rule 62(d) stay. Cataloguing the perceived benefits such a stay would confer upon CS Assets sheds no light on the bond question.

After careful consideration, the Court finds that CS Assets' showing is inadequate to constitute the good cause or extraordinary circumstances necessary to depart from the usual, baseline requirement that an appellant seeking a stay of a money judgment pending appeal must pay a supersedeas bond to secure the appellee from any resulting loss. The fundamental point that defendant overlooks is that the supersedeas bond requirement is designed to safeguard the interests of prevailing plaintiffs, not appealing defendants. Without question, CS Assets has the right to challenge on appeal this Court's refusal to construe Alabama law to authorize a defendant to force a putative redemptioner to complete a sale at the court-determined price, even though the Alabama Supreme Court has explained that redemption defendants cannot compel such a transaction. But if CS Assets wants to stay this Court's rulings pending appeal, then First Financial will suffer a very real, tangible harm for which security is necessary. The Clerk is holding more than $3.2 million that this Court has found belongs to First Financial. If this Court's orders are stayed on appeal, then First Financial will be deprived of access to those funds for the duration of the appeal, notwithstanding the undersigned's final determination that First Financial is entitled to those funds. As a commercial bank in the business of loaning and investing money, First Financial has shown that it would put those funds to work if it could access them now, and thereby earn a profit. A stay pending CS Assets' appeal would prevent First Financial from earning money by investing those funds during the lifespan of the appeal. Under these circumstances, a supersedeas bond is properly required to compensate First Financial for losses it will incur by virtue of a stay pending appeal.

In an effort to avoid posting a bond, CS Assets insists that "[t]here is no harm to the Plaintiff in requiring the maintenance of the funds on deposit pending appeal" because the Clerk of Court is holding them in an interest-bearing account. (Doc. 88, at 4.) But First Financial has presented evidence that it would not lend those funds out at the 0.15% rate they are presently earning in the court registry. Rather, if First Financial had use of the funds now, "[a]n anticipated overall average rate of return to the bank on the funds would be 5% per annum." (Goodwin Aff. (doc. 90-1), ¶ 2.) The difference between the 5% that First Financial states it could earn by loaning/investing the funds, and the 0.15% that the funds are earning now, represents loss to the appellee as to which a supersedeas bond is warranted to protect First Financial's interests.

CS Assets responds by dumping 90 pages of banking reports into the record and casting aspersions on First Financial's past "imprudent banking decisions." (Doc. 94, at 2.) CS Assets' point is, apparently, twofold, to-wit: (1) that there are "material issues as to the substantial risk of loss of the funds held in the registry should they be released to First Financial"; and (2) that "the most reasonable investment comparable would probably be to U.S. Treasurers [*sic*] with a duration of 12 -18 months." (*Id.*) Neither assertion is persuasive. As to the former contention, CS Assets apparently labors under the erroneous understanding that the bond requirement is in place to protect CS Assets in the event that it prevails on appeal. The opposite is true. Contrary to CS Assets' suggestion, the issue is not whether CS Assets may obtain a stay on appeal under Rule 62(d) (plainly it can), but whether CS Assets must adhere to the normal, usual practice of posting security as a condition of that stay. CS Assets' suggestion that it should be relieved of the bond requirement because <u>if</u> the funds are released and <u>if</u> CS Assets prevails on appeal, it might have a hard time recovering those funds from First Financial both confuses the issue and disregards the fact that the supersedeas bond rule is designed to protect First Financial, not CS Assets.[8] As to the latter point, CS Assets offers no evidence whatsoever to support its conclusory statement that U.S. Treasury bills earning 0.37% are the "most reasonable investment comparable" to the yields First Financial would earn if it could use the money that this Court has held it is entitled to. There is no reason to believe that First Financial would simply plow the registry funds into 12-month U.S. Treasury bills, or a comparable investment. Indeed, First Financial has expressly denied that such is the case, or that an 0.37% return is anywhere close to its expected yield on those funds. (Goodwin Aff. (doc. 98-1), at 1-2.)

---

[8]      CS Assets' misapprehension of the purposes of the supersedeas bond requirement is underscored by its argument in the alternative that it "offers to deposit a deed to the property with the Court to secure its obligation to transfer the property should it be successful upon appeal." (Doc. 88, at 3.) Again, the purpose of the supersedeas bond is to protect First Financial, the victorious party below, not to grease the skids for CS Assets' desired outcome if CS Assets, the losing party below, wins on appeal. Depositing a deed for property that First Financial does not want as security for CS Assets' obligation to sell the property to First Financial if CS Assets prevails on appeal would do nothing to protect First Financial's interests in being made whole now, nor would it compensate First Financial for damages attendant to any CS Assets-caused delay in First Financial's recovery of its registry funds. In short, the proposed deed is not adequate security because it would not protect First Financial's interests, would not promote any of the purposes or functions of a Rule 62(d) supersedeas bond, and would instead further CS Assets' agenda in the event that its appeal is successful.

In light of the foregoing, it is the opinion of this Court that CS Assets has failed to satisfy its burden of demonstrating that this action falls into the unusual or extraordinary category of cases in which a supersedeas bond should not be required as security for stay of a money judgment on appeal. In fact, the prevailing party in this District Court has shown that it will suffer direct financial harm if this Court's rulings are stayed pending appeal, inasmuch as it will not be able to lend or invest the $3.2 million held by the Clerk of Court during the pendency of appeal, activities through which it reasonably expects to earn a return far higher than that accruing in the interest-bearing account where those funds are presently maintained.

The only remaining question concerns the size of the supersedeas bond. Under Rule 62(d), "the district court has discretion as to the amount of the bond." *DeKalb County School Dist. v. J.W.M.*, 445 F. Supp.2d 1371, 1376 (N.D. Ga. 2006). That said, "[t]he general rule is for the district court to set a supersedeas bond in the full amount of the judgment, plus interests, costs, and damages for delay." *New Access Communications LLC v. Qwest Corp.*, 378 F. Supp.2d 1135, 1138 (D. Minn. 2005) (citation omitted). The critical component here is "damages for delay." As discussed *supra*, the record shows that First Financial, in the course of its regular commercial banking activities, would invest or lend the funds for a roughly 4.85% higher annual yield than they are now earning in the registry, and that a stay pending CS Assets' appeal would prevent First Financial from doing so. This is precisely the sort of loss encompassed by the notion of "damages for delay," for which a supersedeas bond should be required. That said, CS Assets has presented evidence that First Financial has invested only 63% of its assets in loans. (Doc. 94, Exh. 1, ¶ 4.) Far from quarreling with that figure, First Financial merely states that its "percentages are very normal in the banking industry." (Doc. 98-1, ¶ 4.) This unrebutted evidence supports a reasonable inference that, if the $3.2 million were released to it, First Financial would invest or lend not 100% of those funds, but only 63%, in keeping with those reported, uncontroverted percentages. That factor must be accounted for in the supersedeas bond calculations. Finally, the Court reasonably estimates that the appeals process, which has already been underway for three months, will last an additional 10 months from today (after accounting for the near-certainty of requests for rehearing or *en banc* consideration by the losing party), such that 10 months worth of foregone returns on the subject funds are properly counted as delay damages.

Based on the foregoing findings, the Court calculates the delay damages for which any supersedeas bond must compensate First Financial as follows: $3,207,995.65 (principal amount in court registry that this Court has determined is due and owing to First Financial) times 0.63 (percentage of funds that First Financial invests in loans) times 0.0485 (differential between expected commercial banking investment return and actual return on funds in court registry) times 0.833 years (expected duration of appeals process from this date forward). After performing the requisite arithmetic, the delay damages to First Financial occasioned by a stay on appeal are properly calculated as being **$81,683.59**. That amount is set as the Rule 62(d) supersedeas bond in this case. If CS Assets wishes to obtain a stay of this Court's rulings pending appeal and to forestall the immediate disbursement of funds to First Financial, it must timely post a bond in that amount.

**III.     Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Plaintiff's Motion for Leave to File Controverting Affidavit (doc. 98) is **granted**.
2. Defendant's Motion to Stay Proceedings Pending Appeal and to Relieve Appellant from any Requirement to Post Bond (doc. 88) is **denied**.
3. Plaintiff's Motion for Disbursement of Funds Held in Registry (doc. 79) is **granted**. In accordance with this Court's prior rulings, plaintiff is entitled to disbursement of funds held in the court registry in this matter, amounting to **$3,207,995.65**, plus interest.
4. Notwithstanding items 2 and 3, defendant may obtain a stay of this disbursement order pursuant to Rule 62(d), Fed.R.Civ.P., by depositing a supersedeas bond with the Clerk of Court in the amount of **$81,683.59** to secure First Financial from delay damages that the stay is reasonably expected to cause. If CS Assets desires a Rule 62(d) stay, it must present the Clerk of Court with a supersedeas bond in that amount by no later than **August 19, 2010**.
5. If CS Assets does not timely deposit that supersedeas bond as provided in item 4, then the Clerk of Court is **directed** to disburse all funds held in the registry in this matter, including principal and interest (subject of course to the 10% fee on interest pursuant to 28 U.S.C. § 1914 and Local Rule 67.1(g)), to plaintiff on **August 20, 2010**, or as soon thereafter as is reasonably practicable, without

further order of the Court.  Plaintiff will be expected to comply with the requirements of Local Rule 67.1(e) prior to disbursement.

DONE and ORDERED this 5th day of August, 2010.

s/ WILLIAM H. STEELE<br>CHIEF UNITED STATES DISTRICT JUDGE